IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| CHARLES WATSON, | No. 9:14-cv-00638-JKS |
| --- | --- |
| Petitioner, | MEMORANDUM DECISION |
| vs. | |
| ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1] | |
| Respondent. | |

Charles Watson, also known as Jean Bernier, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. On January 16,1992, a jury convicted Watson of first-degree robbery, second-degree robbery, second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon, and the New York Appellate Division affirmed his conviction on appeal. *People v. Watson*, 613 N.Y.S.2d 613 (N.Y. App. Div. 1994). At the time Watson filed his Petition and throughout briefing in this case, Watson was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Auburn Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 03-A-2302), indicates that Watson was discharged from state custody on June 18, 2015, the maximum expiration date of his state sentence. The record before this Court indicates that Watson is now in the custody of the Federal Bureau of Prisons

---

[1] Because Watson has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is re-instated as Respondent. FED. R. CIV. P. 25(c).

("BOP") and incarcerated at FCI Allenwood (BOP Register Number 29463-054). Respondent has answered, and Watson has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 1, 2011, while in state confinement, Watson was charged with using drugs in violation of Institutional Rule 113.24. According to the report and accompanying documents, Watson was randomly selected to provide a urine sample that subsequently tested positive for THC.

On October 17, 2011, Hearing Officer Claude Schneider conducted a Tier III disciplinary hearing.[2] Officer Schneider read the misbehavior report into the record, and Watson pleaded not guilty to the charge. He acknowledged that he had been served prior to the hearing with a copy of the misbehavior report, the request for urinalysis form, the urinalysis test procedure forms, the test results, and Appendix C for the drug testing system. He also confirmed that he understood that he could present witnesses and evidence at the hearing and that he could make procedural objections and defenses that would be considered by the hearing officer. He further stated that he waived assistance during the hearing.

When given the opportunity to make a statement, Watson indicated that, although his urinalysis request form listed the reason for his test as "random," it was the second time in two months that he had been subject to random urine testing and he had never previously been randomly tested during his 21 years of confinement. Watson requested documentation on the procedures used by the Albany Central Office for selecting inmates for random urinalysis testing

---

[2] "Tier III hearings concern the most serious violations and may result in unlimited [special housing unit ("SHU")] confinement (up to the length of the sentence) and recommended loss of 'good time' credits." *Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998).

as well as a list of inmates also asked to provide a urine sample. The hearing officer noted that some facilities may test more frequently than others but agreed to adjourn the hearing so that he could contact the Albany office to see if the requested documents were available to be turned over to Watson.

Roughly two hours later, the hearing was re-convened. Officer Schneider explained that he had contacted the Albany office and was told that inmates were not permitted to review the selection procedures used for random drug tests. Watson stated that he believed he was being harassed by prison staff and may have been deliberately subjected to the test. The hearing officer assured Watson that the test was ordered randomly through the Albany office and that prison staff had no control over the procedures utilized by the Albany office. Watson offered no further evidence or argument.

Shortly thereafter, Officer Schneider relied on the misbehavior report and the drug testing documents to find Watson guilty of drug use in violation of Rule 113.24. Officer Schneider imposed a penalty of 3 months' confinement in SHU, 3 months' loss of packages, 3 months' loss of commissary, and 3 months' loss of phone privileges. He also recommended 3 months' loss of good time credit.

Watson then filed a *pro se* administrative appeal to the Commissioner of the Department of Correctional Services ("DOCS"), arguing that he was denied the opportunity to properly formulate a defense when the hearing officer erroneously denied him the requested documentary evidence. On December 2, 2011, the hearing officer's disposition was affirmed.

On December 12, 2011, Watson, proceeding *pro se*, initiated an Article 78 proceeding in county court, challenging the result of his Tier III hearing. Upon the People's request, the

county court ordered the petition transferred to the Appellate Division. In his brief to the Appellate Division, Watson renewed his claim that DOCCS improperly denied him access to copies of their Performance Review Function Manual and the October 7, 2011, list of inmates selected for random drug testing.[3] The Appellate Division affirmed the Tier III disciplinary determination in a reasoned opinion issued on July 3, 2013. *In re Watson v. New York State Dep't of Corr. & Comm. Supervision*, 971 N.Y.S. 578 (N.Y. App. Div. 2013). The appellate court held that, to the extent Watson's claim could be construed as challenging the sufficiency of the evidence, such claim was meritless because the misbehavior reports, hearing testimony, and relevant documentation supported the drug use charge. *Id.* The court likewise rejected Watson's procedural claim, finding no basis to disturb the hearing court's ruling that Watson was not entitled to copies of the Performance Review Function Manual and the list of inmates selected for random drug testing. Watson filed a *pro se* application for leave to appeal to the New York Court of Appeals the denial of his procedural claim, which was summarily denied on May 6, 2014. *In re Watson v. New York State Dep't of Corr. & Comm. Supervision*, 10 N.E.3d 191 (N.Y. 2014). Watson timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on May 28, 2014.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Watson challenges his prison disciplinary determination, arguing that his due process rights were violated because he was denied the right

---

[3] Watson also sought declaratory relief and challenged the results of his Tier II hearing. Because those claims are not relevant to the instant Petition, they will not be further discussed.

4

to present a defense at his Tier III disciplinary hearing when the hearing officer refused his request for certain documentary evidence.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct

unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

### IV. DISCUSSION

A.  Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the

litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

A petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficent to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral

7

consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)).

However, courts within this Circuit have held that, unlike a challenge to an underlying criminal conviction, "a challenge to a disciplinary hearing which results in loss of good time does not presume collateral consequences and petitioner is therefore required to demonstrate a concrete injury in fact in order to avoid dismissal for failure to satisfy Article III's 'case or controversy' requirement." *Butti v. Fischer*, 385 F. Supp. 2d 183, 186 (W.D.N.Y. 2005); *see also Sullivan v. Graham*, No. 9:07-CV-0499, 2008 WL 2074047, at *1 (N.D.N.Y. May 14, 2008) (citing *Butti* for the proposition that "collateral consequences sufficient to satisfy the 'case or controversy' requirement of Article III, Section 2, of the Constitution are not presumed where the petition challenges only the loss of good time credits"). In the instant case, Watson's sentence has expired, he has been released from state prison, and his Petition fails to allege any collateral consequences related to his pre-release disciplinary conviction. Accordingly, Watson's claim is moot, and his Petition is denied on that ground. *C.f. Gutierrez v. Laird*, No. 05-CV-5135, 2008 WL 3413897, at *1 (E.D.N.Y. Aug. 8, 2008) (finding § 2241 habeas petition moot where petitioner sought a credit for time served but was no longer in federal custody).

B.     Merits

Even if Watson's claim were not moot, he still would not be entitled to relief because the claim is without merit.

8

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship."[4] *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

To succeed under a due process claim based on the loss of good time credits, the petitioner must establish that: (1) he was not provided a written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a nonneutral hearing body conducted the hearing; (3) he was not afforded the opportunity to present evidence and call witnesses; (4) he was not granted assistance to understand and prepare his defense; or that (5) the factfinder failed to provide a written statement of the evidence relied upon in making his decision and the reasons

---

[4] As a threshold matter, an inmate asserting a violation of his right to due process must first establish that he had a protected liberty interest in remaining free from the confinement that he challenges and, if so, that Respondent deprived the petitioner of that liberty interest without due process. *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). "[A] prisoner has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship in relation to the ordinary incidents of prison life.'" *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). It is not clear, however, if the 3-month period of SHU confinement imposed upon Watson is also sufficient to implicate a liberty interest. *See Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (finding that disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life" (quoting *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)). However, the Court need not decide that issue because it is well-settled that a prisoner charged with violating a prison regulation which could result in the loss of good time credit is entitled to minimal due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 563-65 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 482, 487-88 (1973).

for the decision. *See Wolff*, 418 U.S. at 563-67. In his Petition before this Court, Watson alleges that his procedural due process rights were violated under the third element described above (right to present a case) because he was denied certain documentary evidence.

An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. However, "a hearing officer does not violate due process by excluding irrelevant or unnecessary" evidence. *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d. Cir. 1999); *see also Amaker v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388, *10 (S.D.N.Y. 2002) ("[A]n inmate's right to present documentary evidence in his defense does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests for his case[,] [e]ven when documents are relevant and obtainable.").

In this case, Watson requested copies of the procedures used to select inmates for random drug testing as well as the actual list of inmates selected for random drug testing generated on October 7, 2011. He does not, however, challenge the results of the drug test. He alleges only that the requested documents would have enabled him to argue that he was selected for drug testing out of malice and retaliation. But whether Watson was randomly or purposefully selected to provide a urine sample has no bearing on whether he violated Institutional Rule 113.24 by using drugs.[5] Thus, the requested documents were not relevant and thus properly excluded from

---

[5] To the extent Watson's Petition may be construed to raise a claim that his due process rights were violated by the prison's alleged failure to comply with the DOCCS's procedures regarding random drug testing, such claim is insufficient to establish a violation of Watson's right not to be deprived of liberty without due process of law. The violation of state procedural rules or safeguards does not in itself constitute deprivation of due process, where the

10

the disciplinary hearing. And because the proffered evidence did not challenge his culpability at the incident, Watson cannot show that its exclusion prevented him from presenting his case. *See Clark v. Dannheim*, 590 F. Supp. 2d 426, 429-31 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." (citation omitted)).

An inmate who was properly denied access to documentary evidence at a disciplinary hearing may nonetheless be entitled to relief. "Although [the right to documentary evidence] can give way to legitimate concerns over institutional safety . . . an inmate is still entitled to some explanation of the basis for a hearing officer's denial of the inmate's request for . . . items of

---

process actually provided nevertheless is permissible under the Constitution. *See, e.g.*, *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994) ("Federal constitutional standards rather than state statutes define the requirements of procedural due process." (quoting *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)).

Moreover, it is well-settled New York law that, where the hearing officer's determination of guilt is based only on the result of the urinalysis tests, sufficient evidence supports the determination of guilt, and a defendant may not challenge the source that served as the basis upon which to commence the investigation. *Cf. Mitchell v. Selsky*, 675 N.Y.S.2d 197, 198 (N.Y. App. Div. 1998) ("[I]t was unnecessary for the Hearing Officer to assess the reliability of the confidential informant inasmuch as the determination of petitioner's guilt was not dependent upon the confidential information but merely provided the suspicion prompting the request for petitioner's urine sample[.]"). This rule is not inconsistent with federal due process. The United States Supreme Court has held that, because confrontation and cross-examination "present greater hazards to institutional interests" due to their "inherent danger and the availability of adequate bases of decision without them," such matters (as opposed to the limited right to call witnesses) are left "to the sound discretion of the officials of state prisons." *Baxter v. Palmigiano*, 425 U.S. 308, 321-22 (1976). Indeed, Watson fails to allege any facts suggesting that his urinalysis drug test was unreasonable, *see, e.g.*, *Thompson v. Souza*, 111 F.3d 694, 702-03 (9th Cir. 1997) (outlining factors to determine if non-random drug testing through urinalysis constitutes a reasonable search under the Fourth Amendment), and Watson does not cite, and this Court is not aware of, any Supreme Court authority granting a state prisoner habeas relief based on a defense that the prisoner was purposefully rather than randomly selected for a drug test, the failure of which led to a disciplinary infraction.

11

evidence." *Loret v. Selsky*, 595 F. Supp. 2d 231, 234 (W.D.N.Y. 2009); *see also Collins v. Ferguson*, 804 F. Supp. 2d 134, 139 (W.D.N.Y. 2011) ("prison officials may be required to explain, in a limited manner, the reason . . . why requested evidence was excluded or denied" (quoting *Ponte v. Real*, 471 U.S. 491, 497 (1985))). The record here indicates that, during a break in the proceeding, the hearing officer informed Watson that he had contacted the proper authorities in Albany and was told that he was not permitted to give Watson a copy of the random drug testing list or procedures. The hearing officer stated that Watson's drug test had been ordered based upon the computer-generated list but that, pursuant to internal guidelines, the list and procedures could not be provided. The hearing officer thus gave Watson a reasonable explanation for his refusal to turn over the documents. Accordingly, Watson cannot prevail on any claim that he was denied due process due to an inability to present his case.

## V. CONCLUSION

Watson's Petition is moot and without merit.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 14, 2015.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge